**PROPERTY RESOURCES CORPORATION and Triboro Maintenance Corporation, Petitioners,**

v.

**NATIONAL LABOR RELATIONS BOARD.**

No. 87–1656.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 17, 1988.

Decided Dec. 16, 1988.

**965**

Adin Carl Goldberg, for petitioners.

Julie Broido, Atty., N.L.R.B., with whom Aileen A. Armstrong, Deputy Associate Gen. Counsel, and Peter Winkler, Atty., N.L.R.B., Washington, D.C., were on the brief, for respondent.

Before WALD, Chief Judge, and MIKVA and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

Property Resources Corporation ("Property Resources") and its division, Triboro Maintenance Corporation ("Triboro"), dispute a determination by the National Labor Relations Board ("the Board") that the company had agreed orally to a collective bargaining agreement and then refused to execute it in writing and that it had discharged six painters in order to discourage union activity. The Board has filed a cross-application for enforcement of its order. Because we find that there was substantial evidence on the record as a whole in support of the Board's findings, we deny the petition and enforce the Board's order in full.

## I. BACKGROUND

Local 32–E of the Service Employees International Union represents the mechanics, maintenance workers, painters and utility employees working for Triboro in approximately 55 low-income buildings in the New York area developed and managed by Property Resources. The collective bargaining agreements for these employees and employees of another division, PRC Management Corporation ("PRC"), expired in the fall of 1985 and negotiations toward new agreements took place on three occasions in September between three Triboro and PRC executives, for the employer, and a union committee. Property Resources concedes that, on September 11, agreement on the remaining issue, wages, was reached as to PRC employees and that a parallel wage offer was made by the senior vice president of both Triboro and PRC to Triboro employees but contends that no wage agreement was reached. The company suggests two alternate grounds for its contention: that the senior vice president lacked actual or apparent authority to make the offer for Triboro and that the union failed to accept the offer before it was withdrawn a few days later. The Board found that the senior vice president had actual or apparent authority to negotiate and contract with the union and that the offer was accepted the same day it was made and therefore Triboro's repudiation of the agreement and refusal to execute a collective bargaining agreement violated sections 8(a)(1), 8(a)(5) and 8(d) of the National Labor Relations Act. No alternative was negotiated or implemented.

In March 1986, six painters represented by Triboro were laid off. Triboro claims that the layoffs were entirely due to economic necessity and in no way were intended to frighten employees into renegotiating wage increases. The Board found that the layoffs were motivated in part by anti-union animus and in part by economic necessity but that, if the employees had agreed to renegotiate wage increases, the layoffs would not have occurred. The layoffs, therefore, were found to be violations of sections 8(a)(3), 8(a)(5) and 8(d) of the Act.

The Board ordered Property Resources and Triboro to cease and desist from such violations, to execute the negotiated agreement, to make the employees whole for losses caused by failure of the company to adhere to the agreement plus interest, to reinstate and make whole the six painters who were laid off and to post a remedial notice.

## II. DISCUSSION

There is no disagreement between Triboro and the Board as to the applicable law or its import. The challenge is limited to findings of fact and, therefore, we must uphold the Board if its findings are supported by substantial evidence on the record as a whole, even if there are two fairly conflicting views and even if this court would make a different choice if its review were *de novo. Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951). We conclude that the Board's findings are supported by substantial evidence.

### A. *Existence of Oral Agreement*

■ The Board's decision that an agreement between Triboro and Local 32–E had been reached is supported by testimony by two of the union negotiators and contradicted by no eye witnesses. We are not persuaded by Property Resources' argument that the two witnesses are not credible, because of inconsistencies in their statements, for two reasons: (1) the Administrative Law Judge found their testimony credible and credibility determinations are particularly inappropriate for appellate review, and (2) the record demonstrates that the inconsistencies were both trivial and collateral. The evidence proffered by the company does not cast doubt on the union negotiators' testimony as it consisted solely of testimony by Jerome Chatzky, chairman of the board of Property Resources, who, by his own admission, was not involved until several days after the union claims that agreement was reached. Moreover, we find reasonable the Board's inference, from the company's failure to call any of the executives who were directly involved in the negotiation, that the testimony would most likely have been detrimental to the company's position.

The Board's decision that the senior vice president had actual or apparent authority to commit the company to a collective bargaining agreement is supported by evidence that he had negotiated and signed an agreement with the union concerning employees at a different building six months before; that the company's announcement of his appointment described him as responsible for PRC and Triboro and charged with the task of integrating the two divisions for greater efficiency and growth; and that his predecessor had negotiated and signed previous collective bargaining agreements with the union. Again, the only evidence to the contrary was testimony by Chatzky which did not cite any action that effected a reduction in the senior vice president's authority since the last collective bargaining agreement was signed nor any statement by a company representative that would have communicated any such change to the union.

### B. *Layoffs*

■ The Board found that Chatzky's motivation for laying off six painters in March, 1986, was partly to effect economies and partly to force the union to renegotiate and that, had the employees not continued to refuse to renegotiate, there would have been no layoffs. 285 NLRB No. 137 (1987). In a mixed motive case, the Board's findings must be upheld if there is substantial evidence that anti-union animus was a substantial or motivating factor in a discharge or other adverse action against an employee and that the employer would not have discharged the employee in the absence of anti-union animus. *See NLRB v. Transportation Management Corp.,* 462 U.S. 393, 402–03, 103 S.Ct. 2469, 2474–75, 76 L.Ed.2d 667 (1983) (upholding the Board's interpretation of section 8(a)(3) of the National Labor Relations Act as delineated in *Wright Line Co.,* 251 NLRB 1083 (1980), *enf'd on other grounds,* 662 F.2d 899 (1st Cir.1981), *cert. denied,* 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982)). As direct evidence of employer motivation is generally scarce, this court has found that "circumstantial

evidence alone may establish unlawful motivation in a § 8(a)(3) case." *Southwire Co. v. NLRB*, 820 F.2d 453, 460 (D.C.Cir. 1987).

■ The Board's decision that one motive for the layoffs of the six painters was anti-union animus is supported by evidence that the company knew that the painters were union members; that Chatzky wanted the union to forfeit the wage increases negotiated the previous September and accept an increase one/fifth the size but that the union had not done so; and that Chatzky, first in October or November and again in January or February, had threatened the union members with layoffs, if he were forced to pay the negotiated increases. Chatzky testified that he made no threats, that what he said was that he might have to lay off some men whatever the outcome of the negotiations. The Board largely discredited his testimony because it was inconsistent with other evidence. The Board did accept Chatzky's testimony to the extent that it found that economic motivation played same role in the decision to lay off the employees.

We are unwilling to overturn the Board's credibility determination without more. The Board, when faced with two witnesses that contradict each other, must always choose which to believe and which to discredit. We do not find the Board's choice here unreasonable. The union members' testimony was not intrinsically implausible and Chatzky's testimony was uncorroborated.

The Board's decision that the layoffs would not have occurred but for the anti-union animus is supported by evidence that the layoffs occurred not long after failure of the company's second attempt to dissuade the employees from insisting on their negotiated wage increases; that only union members were laid off; that the reason given for the layoffs at the time—lack of work for the painters—was implausible even to coworkers and suggested that a message to all employees was intended; that a different reason was maintained before the Board; that the company had paid more in bonuses to administrative staff of PRC and Triboro, including dispatchers and stockroom clerks, just a few months before

the layoffs than it saved through the layoffs; that the entire operation regularly loses between $1.5 and $3 million per year, compared to which the amount saved through the layoffs was negligible; and that layoffs were a departure from the practice generally followed by the company when finances were tight, which was to transfer funds from one division to another.

That such evidence is appropriate for drawing inferences of unlawful motivation is amply supported by precedent. *See Transportation Management*, 462 U.S. at 404, 103 S.Ct. at 2475–76 (that employer was known to be upset with union activity was a ground for disbelieving purported economic reason for discharge); *Southwire*, 820 F.2d at 460, 464 (timing of discharge and departure from usual practices can be significant indicia of motive); *Shattuck Denn Mining Corp. v. NLRB*, 362 F.2d 466, 470 (9th Cir.1966) (can infer from falsity of employer's stated reason for discharge that motive is unlawful); *NLRB v. Industrial Erectors, Inc.*, 712 F.2d 1131, 1137 (7th Cir.1983) (shifting explanation for discharge is evidence of unlawful motive); *NLRB v. Dorothy Shamrock Coal Co.*, 833 F.2d 1263, 1268–69 (7th Cir.1987) (employer's actions contradicting avowed reason for discharge is evidence that reason is merely pretext).

The company, which bears the burden of proving that the layoffs would have occurred in the absence of a conflict over wage increases, *see Transportation Management*, 462 U.S. at 395, 402–03, 103 S.Ct. at 2474–75, provided only Chatzky's testimony. No documentation supporting its alleged financial crunch was submitted to the Board. *See Dorothy Shamrock Coal*, 833 F.2d at 1268–69 (lack of documentation for claim of economic necessity is evidence that it does not exist). Further, Chatzky's only explanation of why the company lacked funds was that the government had only increased its subsidy three percent and delayed in granting any increases beyond that amount. Yet this economic necessity argument, if accepted, only proves that the company could not afford the negotiated wage increases. The workers laid off were still being paid at the

wage set by the expired collective bargaining agreement. Chatzky also drew different inferences from some of the evidence that the Board viewed as undermining the company's position, but did not establish different facts.

That an employer testifies that it had business reasons for laying off union members during a head-to-head clash with the union is not creditable in itself. It would be a rare hearing before the National Labor Relations Board in which an employer did not make such a claim. To establish that it would have laid off the painters even if the union had backed down and renegotiated the increases, Triboro needed to assemble more than bare assertions or even plausible reasoning; it had to furnish proof. This it failed to do. Thus the evidence relied on by the Board, while circumstantial, is sufficient.

## III. CONCLUSION

We hold that the Board's decision is based on substantial evidence on the record as a whole and therefore the petition is denied and the Board's order enforced in full.

*It is so ordered.*