901 F.2d 1130
 134 L.R.R.M. (BNA) 2152, 284 U.S.App.D.C. 78
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
BREAKFAST PRODUCTIONS, INC., Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 No. 89-1362.
 United States Court of Appeals, District of Columbia Circuit.
 April 25, 1990.
 
 Before WALD, Chief Judge, and MIKVA and BUCKLEY, Circuit Judges.
 
 JUDGMENT
 PER CURIAM
 
 1
 This cause came to be heard on the petition for review of an order of the National Labor Relations Board, and was briefed by counsel. The issues have been accorded full consideration by the Court, including oral argument, and occasion no need for a published opinion. See D.C.Cir.Rules 14(c), 14(d). For the reasons stated in the accompanying Memorandum, it is
 
 
 2
 ORDERED AND ADJUDGED, by the Court, that the petition for review is hereby denied, and the National Labor Relations Board's order is hereby affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15.
 
 MEMORANDUM
 BACKGROUND
 
 4
 In March 1989, respondent National Labor Relations Board ("NLRB" or "Board") affirmed by order the findings of an Administrative Law Judge ("ALJ") that petitioner Breakfast Productions, Inc. ("BP") had engaged in unfair labor practices. In relevant part, the ALJ found that BP had illegally dismissed Erwing Rendon in order to discourage support among BP employees for joining Local 3 of the Bakery, Confectionery, and Tobacco Workers Union ("the Union"). In this appeal for review of the Board's order, BP argues that the ALJ and the NLRB unwarrantedly credited evidence that Rendon was an "employee" under the definition of the National Labor Relations Act and was therefore entitled to statutory protection for Union-related activities. According to BP, the record evidence, seen in light of the credibility of the testifying witnesses, indicates that Rendon was actually a "supervisor" not entitled to those statutory protections. We affirm the NLRB's findings against BP as supported by substantial record evidence.
 
 STATUTORY FRAMEWORK
 
 5
 Section 2(3) of the National Labor Relations Act ("the Act") states that the term "employee" as used in the Act does not include "any individual employed as a supervisor." 29 U.S.C. Sec. 152(3) (1982). A supervisor, in turn, is defined as
 
 
 6
 any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.
 
 
 7
 Id. Sec. 152(11). Under Sec. 7 of the Act, "[e]mployees" are given the right to self-organization and collective bargaining. Id. Sec. 157. Section 8(a) makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [section 7]," or to discriminate in a manner that encourages or discourages union membership. Id. Sec. 158(a)(1), (3).
 
 ANALYSIS
 
 8
 BP's argument on appeal is based on two related claims: (1) that the ALJ made an erroneous credibility determination by mistakenly attributing NLRB's use of leading questions to BP; and (2) that the evidence in the record indicates that Rendon was a supervisor. Neither contention is persuasive.
 
 A. Witness Credibility
 
 9
 The two key witnesses who appeared before the ALJ were Rendon and Stephen Dew, one of BP's co-owners. Rendon testified to the effect that he had not been a supervisor. He explained that management had never told him that he was a supervisor, that his responsibilities were identical to those of other production workers, that he merely introduced Julio Alvarez and Emme Loy to Stephen Dew but had no input into Dew's decision to hire them, and that he never recommended that a BP employee be promoted or terminated. Although Rendon admitted that Stephen Dew had taught him to make dough, Rendon testified that he did not have authority to train other employees to make dough. Loy corroborated Rendon's account that Dew alone had hired him, without more than an introduction by Rendon, and another employee, Carlos Manjivar, testified that Rendon was merely a rank-and-file employee.
 
 
 10
 Stephen Dew testified to the effect that Rendon was a supervisor. He stated that Rendon was partially responsible for maintaining the daytime production schedule, that Rendon evaluated employee performance, and that Rendon participated actively in decisions to hire and fire employees. In addition to pointing out that Rendon's salary was nearly $100 per week higher than the salary of other production employees, Dew stated that Rendon had attended monthly management meetings and had recommended that BP hire Alvarez and Loy, and fire Prospero Romero and Carlos Arragone. David Dew, BP's other co-owner, testified that Rendon had been promoted to supervisor, even though the company records contained no document to that effect.
 
 
 11
 The ALJ and, on review, the NLRB were required to choose between these competing and inconsistent versions of testimony. This court affirms the NLRB's choice so long as it is "not ... unreasonable." Property Resources Corp. v. NLRB, 863 F.2d 964, 967 (D.C.Cir.1988). As evidence of the unreasonableness of the ALJ's decision to credit Rendon and Loy, BP points to the ALJ's comment in his opinion that BP's evidence was composed "for the most part, of testimony conclusional in character and which was adduced by way of leading questions." Joint Appendix ("J.A.") at 30. At the hearing, however, the ALJ had directly criticized the use of leading questions by the NLRB lawyer. Consequently, BP concludes, the ALJ must have been confused and attributed the improper technique to the incorrect party. As a result, under BP's theory, the ALJ's overall credibility determination was flawed.
 
 
 12
 BP's argument is exaggerated. While it is true that the ALJ did not rebuke BP's attorney for using leading questions in eliciting evidence from the Dews, BP's lawyer asked a number of questions that could be construed as "leading." See, e.g., J.A. at 209 ("Did there come a time when the company enacted or created an award called Employee of the Quarter?"); J.A. at 213 ("Did there come a time when you received a petition from Wellington Toala on behalf of all the employees?"). Rendon's testimony, moreover, was far from "intrinsically implausible." Property Resources, 863 F.2d at 967. The lack of proof of written notice of Rendon's supervisory position; Loy's testimony to the effect that Dew actually hired him; and the testimony of even hostile co-workers, such as Manjivar, that Rendon was not a supervisor all lend support to Rendon's claim. And contrary to BP's contention, there was a credible explanation as to why Rendon's salary was higher than the salaries of other production workers and even of his replacement, who was called a "supervisor": Rendon enjoyed substantial seniority, having worked at BP longer than other production workers with similar responsibilities. Finally, the ALJ noted explicitly in his opinion that his conclusions were based "[u]pon the entire record, including my observation of the demeanor of the witnesses." J.A. at 27. In those circumstances, the ALJ's findings "are entitled to great deference, as long as relevant factors are considered and the resolutions are explained." NLRB v. Louton, Inc., 822 F.2d 412, 414 (3d Cir.1987). In light of the foregoing indications of the plausibility of Rendon's overall argument, and the substantial record evidence--discussed below--that Rendon was not a supervisor, the ALJ's decision to credit Rendon's testimony was clearly justified.
 
 B. Record Evidence
 
 13
 In determining whether a person meets the statutory definition of a supervisor, set out above, the court properly focuses on the existence of supervisory authority, rather than on "the degree or frequency of its exercise." Oil, Chemical and Atomic Workers Int'l Union v. NLRB, 445 F.2d 237, 244 (D.C.Cir.1971). The supervisor must possess "real power" that can be exercised in the employer's interest; a person's actual task, rather than his title, is decisive to a judicial determination of his status. Passaic Daily News v. NLRB, 736 F.2d 1543, 1550 (D.C.Cir.1984). We accord a large measure of deference to the NLRB's determination of whether an individual is an "employee" or a "supervisor." Id.
 
 
 14
 In this case, there is no question that the Board's conclusion rests on substantial evidence. Rendon was hired in 1983 as a cleaner, at $225 per week. In 1984, Rendon was promoted from cleaner to production employee; in the latter job, his tasks included rolling butter into dough, placing the dough on a stretching machine, and feeding the dough onto a conveyor belt. Stephen Dew taught him actually how to make the dough, and in December 1985, Rendon began to make dough on a full-time basis. At that time, his salary was $363 per week, reflecting both his two years' experience as well as a $25 per week cash bonus for dough making.
 
 
 15
 Absent "solid evidence of the actual possession of supervisory responsibility," we have no reason to accord "litmus paper significance" to the pay differential. Oil, Chemical et al., 445 F.2d at 242. That "solid evidence" is clearly lacking here. Although Rendon apparently had some input into the dough production schedule, Stephen Dew's testimony indicated that Rendon could not deviate from that schedule without permission from his supervisors, and that he did not have a key to the desk where the production schedule was kept. J.A. at 229-31. And, while Rendon was one of the few production-line employees whom Dew had taught to make dough, Rendon appears to have had no authority to train other employees without Dew's permission. In addition, even if Rendon had been present when Dew interviewed Loy and Alvarez, Dew presented no evidence contradicting Rendon's claim not to have known either of them well; the record contains no indication that anyone other than Dew actually made the hiring decisions. In short, Rendon did not possess the "real power" characteristic of a supervisor.
 
 
 16
 Rendon did not share the indicia of supervisory status that the NLRB has cited in other opinions. Although he checked the work of other employees, he did not initial employees' time cards, receive more paid vacation than others, or authorize ill employees to go home. Compare Int'l Baking Co., 240 N.L.R.B. 230, 233 (1979). Rendon was not responsible for initiating formal disciplinary proceedings, or for authorizing overtime or personal days off. Compare Capital Bakers, Inc., 236 N.L.R.B. 1053, 1054 (1978). In short, Rendon was simply one of the more experienced and, perhaps, capable members of the production rank and file. Even if he occasionally engaged in activities that might suggest quasi-supervisory status, there is no substantial evidence that, if his function were measured against the common indicia of a supervisory role, he should be considered as anything but a regular employee.
 
 CONCLUSION
 
 17
 BP's petition for review of the NLRB's order vis-a-vis Rendon is denied, and the order is affirmed in full.
 
 
 18
 So ordered.