998 F.2d 7
 144 L.R.R.M. (BNA) 2743, 302 U.S.App.D.C. 389
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED FOOD & COMMERCIAL WORKERS INTERNATIONAL UNION,
AFL-CIO, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondents.
 No. 91-1468.
 United States Court of Appeals, District of Columbia Circuit.
 June 25, 1993.
Rehearing and Suggestion for Rehearing En Banc
Denied Oct. 5, 1993.
 
 Before: RUTH B. GINSBURG, WILLIAMS and SENTELLE, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came on to be heard on the petition for review of an order of the National Labor Relations Board, and was briefed and argued by counsel. The court has determined that the issues presented occasion no need for a published opinion. See: D.C.Cir.Rule 14(c). For the reasons set forth in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED by the court that the petition for review be denied.
 
 
 3
 It is FURTHER ORDERED, sua sponte, that the Clerk shall withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.R. 15(b)(2).
 
 MEMORANDUM
 
 4
 United Food & Commercial Workers International Union, AFL-CIO ("Union") petitions for review of an adverse grant of summary judgment by the National Labor Relations Board ("NLRB" or "Board"). The Board ruled that, as a matter of law, the Union's 1987 unfair labor practice charges against John Morrell & Co. and its parent corporation, United Brands, Inc. (collectively, unless otherwise indicated, "Morrell"), were time-barred, either as early as 1983 or as late as 1986. John Morrell & Co., 304 N.L.R.B. No. 116, 138 L.R.R.M. (BNA) 1162 (1991). Because we agree that the applicable statute of limitations expired by 1986 at the latest, we deny the petition for review.
 
 I.
 
 5
 Section 10(b) of the National Labor Relations Act provides that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the [unfair labor practice] charge with the Board." 29 U.S.C. § 160(b) (1988). Section 10(b)'s limitations period "does not begin to run until the party filing the charge knows or has reason to know that an unfair labor practice has occurred." Land Air Delivery, Inc. v. NLRB, 862 F.2d 354, 360 (D.C.Cir.1988); see also Gilmore Steel Corp., 291 N.L.R.B. 185, 192, enf'd mem., 134 L.R.R.M. (BNA) 2432 (9th Cir.1989), cert. denied, 496 U.S. 925 (1990) (same). This is true even if the defendant has attempted, without success, fraudulently to conceal the facts underlying the violation. See Hobson v. Wilson, 737 F.2d 1, 35 (D.C.Cir.1984) (holding that "[t]he doctrine of fraudulent concealment does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of the claim he now brings"), cert. denied, 470 U.S. 1084 (1985). Although the date when a complainant acquired actual or constructive knowledge is a factual issue, that issue may be resolved as a matter of law "if no reasonable person could disagree on the date." Kuwait Airways Corp. v. American Sec'y Bank, N.A., 890 F.2d 456, 463 (D.C.Cir.1989).
 
 
 6
 In this case, the Union claims that Morrell and United Brands committed unfair labor practices by closing and reopening the meatpacking plants at Arkansas City, Kansas ("Ark City") and Memphis, Tennessee with the intent to evade its collective bargaining obligations. The Board assumed arguendo that the alleged scheme did, in fact, exist and that Morrell tried, through fraudulent means, to conceal knowledge of the scheme from the Union, see 304 N.L.R.B. No. 116, 138 L.R.R.M. at 1166 n. 17, and we do as well. The issue before us, then, is whether the Board majority reasonably held that there are no genuine issues of material fact precluding summary judgment and that no reasonable person could disagree that the Union should have known of Morrell's unfair labor practices on April 4, 1986.[1] We answer both questions in the affirmative.
 
 
 7
 By the end of March 1983, the Union concededly knew, in the Board's words, four things:
 
 
 8
 (1) that Morrell had requested reductions in the contractual wage rates applicable to the Ark City plant and other facilities, and had threatened to close plants if the Union did not agree to such reductions; (2) that when the Union rejected its request for wage cuts, Morrell closed several plants, including Ark City, ostensibly on a permanent basis; (3) that Morrell thereafter bargained for, and the Union agreed to, the deletion of references to the closed plants from the 1982 Master Agreement and to a side letter stating that nothing in that agreement would preclude Morrell from reopening the closed plants in the future or would require Morrell to apply the contract terms at any reopened plants; and (4) that Morrell, a few months later, reopened the Ark City plant but refused to apply the terms of the Master Agreement (or even, initially, to recognize the Union) at that facility.
 
 
 9
 John Morrell & Co., 304 N.L.R.B. No. 116, 138 L.R.R.M. (BNA) 1162, 1166 (1991).[2] It was against this backdrop that an important development in a realted civil suit, Aguinaga v. John Morrell & Co., No. 83-1858 (D.Kan. filed 1983), occurred.
 
 
 10
 Aguinaga had been brought in 1983 by displaced workers against Morrell and the Union, alleging that (1) Morrell had temporarily closed the Ark City plant pursuant to an illegal scheme to avoid its obligations under the collective bargaining agreement; and (2) the Union had conspired with Morrell to conceal the illegal scheme. During discovery in Aguinaga, Morrell refused to produce the so-called "smoking gun" documents, which documented its scheme, and the dispute was referred to the United States Magistrate for resolution.
 
 
 11
 On April 4, 1986, having reviewed the smoking gun documents in camera, the Magistrate issued an opinion concluding that "Morrell may have committed an unfair labor practice or practices" in closing and reopening the Ark City plant. Memorandum and Order, Aguinaga v. John Morrell & Co., No. 83-1858, slip op. at 38 (D.Kan. Apr. 4, 1986). The Magistrate further stated that Morrell's objectives were "improper, or pursued by improper methods, or both," and that "there is no doubt in the court's mind" that "there is definitive color and substance to plaintiffs' claims of fraud and conspiracy." Id. Given the Magistrate's emphatic description of the documents' import, coupled with what the Union already knew, a reasonable person--even without reviewing the documents themselves--would have been able to deduce Morrell's illegal scheme by April 4, 1986.
 
 
 12
 Even though the District Court reversed the Magistrate's order that Morrell produce the smoking gun documents, which he had termed the "best" and "the only available evidence" of Morrell's scheme, id. at 39, we cannot agree with the Union that it would have been futile to file unfair labor practice charges without the documents. It is the rare case where direct evidence of unlawful motivation, such as the smoking gun documents, exists, and unlawful motivation is therefore usually inferred from the employer's conduct. See, e.g., Property Resources Corp. v. NLRB, 863 F.2d 964, 966-67 (D.C.Cir.1988) (stating that "[a]s direct evidence of employer motivation is scarce, ... circumstantial evidence alone may establish unlawful motivation") (internal quotation marks omitted). We see no reason that the same inference could not easily have been made in this case without the smoking gun documents.[3] Moreover, "notice" of a claim does not require that the potential claimant have in its possession all the evidence necessary to clinch a victory on the claim.
 
 
 13
 For these reasons, we find quite reasonable the NLRB's conclusion that the Union should have filed its 1987 unfair labor practice charges within six months of April 4, 1986. Because the Union did not actually file such charges until October 23, 1987, the Union's 1987 complaint is time-barred. See 29 U.S.C. § 160(b).
 
 
 14
 The Union's next and final argument is that the Board erred in not allowing it to reinstate in 1987, well outside of the NLRA's limitations period, its withdrawn 1983 charges against Morrell alleging refusal-to-bargain at Ark City. The Board has adopted a policy that withdrawn or dismissed charges "may not be reinstated outside the 6-month limitations period of Section 10(b) absent special circumstances in which a respondent fraudulently conceals the operative facts underlying the violation." Ducane Heating Corp., 273 N.L.R.B. 1389, 1390-91 (1985), enf'd mem., 785 F.2d 304 (4th Cir.1986). As the reasonableness of that policy cannot be doubted, see District Lodge 64, Int'l Ass'n of Machinists and Aerospace Workers v. NLRB, 949 F.2d 441, 445 (D.C.Cir.1991), the only issue is whether the Board reasonably determined that Morrell had failed in its attempt fraudulently to conceal the facts underlying the 1987 charge from the Union. We already determined that it had failed in that effort no later than April 1986.
 
 
 15
 * * *
 
 
 16
 For the foregoing reasons, the petition for review is
 
 
 17
 Denied.
 
 
 
 [1]
 We do not address the Union's argument that actual, as opposed to constructive, notice should be required in this case, since that claim was not presented to the Board. See 29 U.S.C. § 158(e) (1988) (barring reviewing courts from considering grounds for reversal not urged before the NLRB). For the same reason, we do not address the Union's claim that even if it should have known of Morrell's illegal scheme to close and reopen Ark City as of April 1986, it had no reason to know of the alleged involvement of Morrell's parent, United Brands, in that scheme, until the following year
 
 
 [2]
 The Board majority found these facts so compelling on the issue of constructive notice that it concluded that the Union should have known of the unfair labor practices charged in this case as early as 1983. Id., 138 L.R.R.M. at 1166. Given our conclusion that the Board reasonably held that the Union had constructive knowledge of Morrell's scheme as of April 4, 1986, we find it unnecessary to decide whether the Union should have known of that time scheme in 1983. In either case, the Union's claims are time-barred
 
 
 [3]
 For example, even without those documents, the Regional Director as early as the summer of 1983 advised the NLRB's Advice Division that, notwithstanding Morrell's contrary assertsions, the Ark City closing was "a temporary closing in light of Morrell's unsuccessful attempts to negotiate lower labor costs at Ark City before it closed the plant and its apparent intent to reopen the plant if it could do so without the Master Agreement." J.A. at 473. It was on the basis of that understanding that he recommended issuing a complaint against Morrell in 1983