INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 147, AFL–CIO, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 01–1301.

United States Court of Appeals, District of Columbia Circuit.

Argued May 16, 2002.

Decided July 9, 2002.

Richard F. Griffin argued the cause for petitioner. With him on the briefs were Helen L. Morgan and Elizabeth A. Na-

deau. John M. Singleton entered an appearance.

William M. Bernstein, Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were Arthur F. Rosenfeld, General Counsel, John H. Ferguson, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, and Frederick Havard, Supervisory Attorney. David A. Fleischer, Senior Attorney, and Frederick L. Cornnell, Jr., Attorney, entered appearances.

Before: GINSBURG, Chief Judge, and RANDOLPH and TATEL, Circuit Judges.

Opinion for the Court filed by Chief Judge GINSBURG.

GINSBURG, Chief Judge:

The International Union of Operating Engineers, Local 147, petitions for review of a Decision and Order of the National Labor Relations Board dismissing a complaint issued by the General Counsel against Tidewater Construction Co. The complaint alleged that Tidewater violated §§ 8(a)(1) & (3) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) & (3), by refusing to consider for hire six applicants, who Tidewater claims were lawfully locked out. We hold that the Board failed adequately to explain why evidence presented by the Union did not demonstrate that Tidewater had unlawfully refused to consider the applicants due to antiunion animus.

## I. Background

Tidewater does heavy industrial and highway bridge construction in the southeastern United States. Until December, 1993 Tidewater was a member of the Virginia Association of Contractors and was a party to successive collective bargaining agreements between the Union and the VAC. Pursuant to this arrangement, Tidewater hired heavy equipment operat-

ing engineers from the Union's hiring hall, and from January, 1992 to October, 1994 all of Tidewater's operating engineers were members of the Union. After Tidewater withdrew from the VAC, the Union filed a petition for a representation election, as the result of which it was certified as the representative of Tidewater's operating engineers in March, 1994. In October, following months of unsuccessful bargaining, the Union called a strike. In December the strikers offered unconditionally to return to work but Tidewater informed the Union it was "locking out the bargaining unit employees in support of [its] contract demand."

To aid in the process of hiring replacements, Tidewater created a "lockout list" of: (1) the 25 striking employees; (2) 40 other individuals who had been on the *Excelsior* list of those eligible to vote in the representation election in March, *see Excelsior Underwear Inc.*, 156 N.L.R.B. 1236, 1966 WL 18282 (1966); and (3) 16 individuals who were neither strikers nor on the *Excelsior* list. Ten of the individuals on the *Excelsior* list would not have been on such a list compiled in December, 1994 rather than in February of that year.

Tidewater hired 40 replacement workers but refused to consider for employment six applicants who were on the lockout list because they had been eligible to vote in the March election. Those applicants were falsely told they were being denied employment because there was no work available. One of the six rejected applicants would not have been on an updated *Excelsior* list.

The Union filed an unfair labor practice charge with the Board, and the General Counsel filed a complaint alleging that Tidewater violated §§ 8(a)(1) & (3) of the Act by failing to consider for hire the six applicants. An Administrative Law Judge dismissed the complaint, *see Tidewater*

*Constr. Co. and Int'l Union of Operating Eng'rs., Local 147*, 333 N.L.R.B. No. 147 at 4–7, 2001 WL 483479 (2001), and the Board affirmed, stating:

> [W]e find that the lockout did not become unlawful because [Tidewater] expanded the lockout beyond current employees who had participated in the strike and refused to consider for hire six job applicants who, by virtue of their prior history of employment in the bargaining unit, were eligible to vote in a Board election held 9 months prior to the start of the lockout. . . .

*Id.* at 1. The Board concluded that Tidewater's reliance upon an outdated *Excelsior* list to determine the scope of the lockout was reasonable. *Id.* at 1–2. In dissent, Member Liebman pointed to evidence of antiunion animus and rejected Tidewater's argument that extension of the lockout to all employees eligible to vote in the representation election brought legitimate economic pressure to bear in support of its bargaining position. *Id.* at 3.

## II. Analysis

▮▮▮▮ The court reviews the Board's decision deferentially. We uphold its findings of fact if they are supported by substantial evidence, *see Pac. Micronesia Corp. v. NLRB*, 219 F.3d 661, 665 (D.C.Cir.2000), and accept its interpretation of the Act if it is reasonable and consistent with controlling precedent, *see Tualatin Elec., Inc. v. NLRB*, 253 F.3d 714, 717 (D.C.Cir.2001). The Board has an obligation to engage in reasoned decision-making, *see Penrod v. NLRB*, 203 F.3d 41, 46 (D.C.Cir.2000), which obligation requires it to give a reasoned explanation when it departs from its own precedent, *see Chelsea Indus., Inc. v. NLRB*, 285 F.3d 1073, 1075–76 (D.C.Cir.2002).

■ The Union contends that the Board, in dismissing the allegation that Tidewater unlawfully rejected the employment applications of six of its members, "failed to consider overwhelming evidence of [Tidewater's] unlawful motivation."* Tidewater argues that the Board properly upheld its action as part of a legitimate lockout of bargaining unit employees.

■ The Board has recently set forth the elements of a refusal-to-consider violation as follows:

> To establish a discriminatory refusal to consider ... the General Counsel bears the burden of showing ... (1) that the respondent excluded applicants from a hiring process; and (2) that antiunion animus contributed to the decision not to consider the applicants for employment. Once this is established, the burden will shift to the respondent to show that it would not have considered the applicants even in the absence of their union activity or affiliation. If the respondent fails to meet its burden, then a violation of Section 8(a)(3) is established.

*FES (A Division of Thermo Power) and Plumbers and Pipefitters Local 520 of the United Assoc.,* 331 N.L.R.B. No. 20, 2000 WL 627640 *10 (2000). It is also well established that "an employer violates neither § 8(a)(1) nor § 8(a)(3) when, after a bargaining impasse has been reached, he temporarily shuts down his plant and lays off his employees for the sole purpose of bringing economic pressure to bear in support of his legitimate bargaining position." *Am. Ship Bldg. Co. v. NLRB,* 380 U.S. 300, 318, 85 S.Ct. 955, 13 L.Ed.2d 855 (1965). We have made clear, however, that "a lockout is unlawful under the Labor Act ... if [it is] motivated by antiunion animus." *Int'l Bhd. of Boilermakers, Local 88 v. NLRB,* 858 F.2d 756, 760 (1988). Thus, whether Tidewater "locked out the six applicant employees ... 'because of their union membership or affiliation'" became the "key contested issue in this case." *Tidewater Constr. Co.,* 333 N.L.R.B. No. 147 at 1.

As the Union shows on review, the Board, having correctly framed the dispositive question, failed reasonably to address it. In particular, the Board failed adequately to consider three indications that Tidewater was motivated by antiunion animus.

First, the Union argues that the Board unreasonably disregarded Tidewater's inability to explain why 10 of the 16 individuals who were neither strikers nor on the *Excelsior* list were included on the lockout list. *See Southwest Merch. Corp. v. NLRB,* 53 F.3d 1334, 1340 (D.C.Cir.1995) ("[T]he absence of any legitimate basis for an action—*i.e.,* the absence of a credible explanation from the employer—may form part of the proof of the General Counsel's case"). We agree.

The ALJ, whose reasoning the Board adopted, noted that after "numerous shifts in position" Tidewater had still provided "no explanation for the inclusion of 10 of the 16 names" on the list. 333 N.L.R.B. No. 147 at 6. The ALJ ultimately concluded that their being listed did not evidence antiunion animus because the 10 individuals did not apply for employment and there was "no proof that the 10 were even union members." *Id.* Whether the 10 applied for employment, however, is irrelevant to whether their unexplained inclusion on the list bespeaks antiunion animus.

---

* Insofar as the Union contends that Tidewater also violated the Act by placing on its lockout list individuals who never sought employment with Tidewater and never knew they were on the list, the Board properly dismissed the complaint. Tidewater's actions neither abridged the § 7 rights of these individuals nor discouraged them from union activity.

Indeed, it is also irrelevant whether they were actually members of the Union, so long as Tidewater thought they were. As the Union points out, the "locator list" maintained by Tidewater described each of the 10 as follows: "Operating Engineers Local 147 — LOCKED OUT EMPLOY-EE." The Board argues lamely that "[t]his ambiguous notation does not prove union membership," Brief at 26 n.10 (emphasis deleted), but the list certainly seems to show that Tidewater thought the 10 individuals were members of the Union, and this is what counts.

The Board also argues that Tidewater's inability to explain why the 10 were on the list does not "alone ... sustain a finding of unlawful motivation." Perhaps not. On the question of animus, however, as we shall see, the Board did not have this evidence "alone" — which may be why neither the Board nor the ALJ gave this rationale in their respective decisions.

Second, the Union argues that the Board failed to explain why Tidewater's statements to the six applicants were not also evidence of an antiunion animus, and how, in light of these false statements, the Board's decision could be reconciled with *Eads Transfer, Inc.*, 304 N.L.R.B. 711, 1991 WL 187496 (1991). Again, we agree.

Tidewater falsely told each of the applicants "there was no work available" rather than telling them they were locked out, as it now claims they were. *Tidewater Constr. Co.*, 333 N.L.R.B. No. 147 at 6. From this misrepresentation the Board could have inferred that Tidewater had an unlawful motive. *See Property Resources Corp. v. NLRB*, 863 F.2d 964, 967 (D.C.Cir.1988). Instead, the ALJ merely observed that Tidewater gave false reasons without explaining why that did not tend to indicate an unlawful motive, and the Board itself did not even mention this evidence. In its brief the Board argues

(echoes?) that "standing alone" the giving of false reasons is "insufficient to establish discriminatory motivation." Again, this evidence did not stand alone, and neither the Board nor the ALJ, unlike the General Counsel on review, implied otherwise.

The Board's decision in this case also appears to be in some tension with its decision in *Eads Transfer*, though perhaps not in direct conflict, as the Union claims. There the Board said:

> [A]n employer can only justify its failure to reinstate economic strikers "for legitimate and substantial business reasons" based on a "lockout" by its timely announcement to the strikers that it is locking them out in support of its bargaining position. For only after the employer has informed the strikers of the lockout can the strikers knowingly reevaluate their position and decide whether to accept the employer's terms and end the strike or to take other appropriate action. In the absence of notification, we conclude that an employer's failure to reinstate economic strikers based on a claimed lockout on their unconditional offer to return to work is inherently destructive of employee rights ... and is a violation of Section 8(a)(3) and (1) of the Act.

304 N.L.R.B. at 712–13. In this case the ALJ held, 333 N.L.R.B. No. 147 at 5–6, and the Board contends in its brief, that Tidewater complied with the notice requirement of *Eads Transfer* because it informed the Union by letter that it was "locking out the bargaining unit employees in support of [its] contract demand." We think this explanation incomplete. The six applicants, who were members of the Union but not striking employees, had no reason to believe that Tidewater considered them part of the bargaining unit being locked out. Therefore, when Tidewater falsely told the applicants there was no

work available rather than telling them they were locked out, it deprived them of whatever ability they may have had to "reevaluate their position" and act accordingly. *Eads Transfer*, 304 N.L.R.B. at 712. Although the six applicants obviously could not have offered "to accept the employer's terms" and return to work, as members of the Union they may have had some influence in the Union's decision whether to accept Tidewater's last offer and end the lockout. On the other hand, if the applicants were in no position to influence the Union, the rationale of *Eads Transfer* may not be implicated. We need not decide now, however, whether *Eads Transfer* controls this case. Having found incomplete the Board's explanation why *Eads Transfer* is inapplicable, we must remand that question to the Board for further consideration.

Third, the Union claims the Board gave an inadequate explanation why Tidewater's lockout of the 10 individuals who appeared only on the outdated *Excelsior* list was not evidence of antiunion animus. Yet again, we agree.

The Supreme Court in *American Ship Building* held that absent antiunion animus an employer may lawfully lockout its employees. 380 U.S. at 318, 85 S.Ct. 955. Board precedent makes clear, however, that a lockout that goes beyond excluding employees to refusing to hire union members as replacements is indicative of antiunion animus. *See Shenck Packing Co.,* 301 N.L.R.B. 487, 489, 1991 WL 21319 (1991). In this case, in addition to the striking employees, Tidewater locked out everyone on the outdated *Excelsior* list which, in keeping with Board practice in the construction industry, *see Steiny & Co., Inc.,* 308 N.L.R.B. 1323, 1326 (1992), included every operator of heavy equipment who had worked for Tidewater 30 days or more in the year prior to the compilation of the list, or for at least one day in the previous year and 45 days in the previous two years.

For the purpose of this case, the Union concedes that Tidewater could have locked out anyone on an *Excelsior* list compiled at the time of the lockout. The Union argues, however, that because all of Tidewater's employees before the March election were members of the Union — as Tidewater well knew — Tidewater's use of a list that was 10 months old was evidence of antiunion animus.

The Board held that Tidewater could lock out any employee having a "reasonable employment nexus with the bargaining unit" and that, because there is no way to "define with absolute accuracy the outer limits of a former employee's reasonable expectation of reemployment in a bargaining unit with a fluctuating work force," Tidewater could rely upon the outdated *Excelsior* list. 333 N.L.R.B. No. 147 at 1–2. The non-sequitur in this is apparent: Because an Excelsior list is an approximation even when first made, the Board allows an employer still to use it when it is further removed from being accurate by the passage of ten months. The logical gap is equally glaring: The Board has not said why it does not require the use of an updated list. Would such a requirement would be too burdensome? To be sure, Tidewater made this and other claims in its brief to the ALJ, but neither he nor the Board adopted Tidewater's argument or gave any other reason for their complacency on this score.

## III. Conclusion

Because the Board failed in three respects adequately to explain why it did not find convincing evidence of Tidewater's antiunion animus, the Decision and Order of the Board is vacated and this matter is

remanded to the Agency for further proceedings consistent with this opinion.

*So ordered.*