UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

NATIONAL LABOR RELATIONS BOARD,
$\qquad$ *Petitioner,*

v.

FORSYTH ELECTRICAL COMPANY,
INCORPORATED,

$\qquad$ *Respondent.*

No. 02-2302

On Application for Enforcement of an Order
of the National Labor Relations Board.
(11-CA-16631, 11-CA-1685)

Argued: June 3, 2003

Decided: June 30, 2003

Before WIDENER, NIEMEYER, and LUTTIG, Circuit Judges.

---

Vacated and remanded by unpublished per curiam opinion. Judge
Niemeyer wrote a dissenting opinion.

---

## COUNSEL

**ARGUED:** Melvin Hutson, MELVIN HUTSON, P.A., Greenville,
South Carolina, for Forsyth. Kira Dellinger Vol, NATIONAL
LABOR RELATIONS BOARD, Washington, D.C., for Board. **ON
BRIEF:** Arthur F. Rosenfeld, General Counsel, John E. Higgins, Jr.,
Deputy General Counsel, John H. Ferguson, Associate General Coun-
sel, Aileen A. Armstrong, Deputy Associate General Counsel, Charles
Donnelly, Supervisory Attorney, Siobhan M. Kelly, NATIONAL
LABOR RELATIONS BOARD, Washington, D.C., for Board.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

***

## OPINION

PER CURIAM:

In this petition for enforcement, the National Labor Relations Board ("NLRB") determined that Forsyth Electrical Company ("Forsyth") illegally refused to reinstate Douglas Hill, David Jones, and John Kimball, three economic strikers, after their unconditional offers to return to work. We conclude that the NLRB did not adequately set forth its reasoning, and therefore vacate its decision and order and remand the matter for further proceedings.

## I.

Forsyth, a North Carolina corporation with an office located in Winston-Salem, is an electrical contractor. In 1995, facing a shortage of labor, with multiple jobs to complete, and with delays caused by inclement weather, Forsyth sought to hire more electricians. At that time, Gary Maurice, the Business Manager of Local Union 342 of the International Brotherhood of Electrical Workers, AFL-CIO, began a "salting"[1] campaign directed at Forsyth. In early June, he encouraged two unemployed union members, including Douglas Hill, to apply for work at Forsyth. Forsyth hired these individuals, but, needing more electricians, Forsyth continued to hire. In late June and early July, Forsyth hired at least two more union workers, electricians David Jones and John Kimball.

Allegedly due to poor working conditions arising out of the labor shortage, Kimball and Jones told Forsyth on July 19 that they were going on strike, and briefly picketed their jobsite. About a week later,

---

[1]In the words of Maurice, "salting" is the "act of going to work for non-Union employers for the purpose of organizing," coined from "the phrase of salting of mines where [one] puts more valuable minerals in a mine to raise its value." J.A. at 69.

Hill also told Forsyth that he was going on strike, although he never picketed or engaged in any other open activity to indicate that he was striking.

Jones, Hill, and Kimball made unconditional offers to return to work on August 17, August 25, and November 10, respectively. Forsyth told Jones and Hill that there was no work available for them, and did not respond to Kimball. Forsyth, in particular, never offered to reinstate them.

Due to these and other incidents, the General Counsel issued a consolidated complaint against Forsyth, alleging violations of the National Labor Relations Act, 29 U.S.C. § 151 et seq. ("NLRA"). Among the allegations were that Forsyth had unlawfully fired electrician Douglas Summers for his labor activities, that Forsyth had unlawfully failed to consider several potential employees because of their union affiliation, and (directly relevant to the instant case) that Forsyth had illegally failed to reinstate Jones, Kimball, and Hill following their unconditional offers to return to work. The Administrative Law Judge ("ALJ") concluded that the union had engaged in a "salting" campaign, including the initiation of an unprotected work slowdown by the union workers, to try to force Forsyth to hire more union electricians. Based on this conclusion, the ALJ rejected several of the General Counsel's charges of illegal activity, determining, for instance, that Summers' participation in the unprotected slowdown justified his termination. The ALJ did conclude that Forsyth had violated the NLRA in several of its other actions, including in particular its failure to reinstate the three alleged strikers.

The NLRB affirmed in part and reversed in part. The NLRB rejected, without discussion, the ALJ's finding that there was a labor slowdown, but agreed with the ALJ that Forsyth unlawfully refused to reinstate the three economic strikers. The NLRB ordered that the three strikers be reinstated to their former jobs or to substantially equivalent jobs, and be made whole for the discrimination they suffered.

The NLRB now petitions this court for enforcement of its order, pursuant to Section 10(e) of the NLRA, 29 U.S.C. § 160(e).

II.

An employee who refuses to work in protest of working conditions is an economic striker and retains his status as an "employee" under Section 2(3) of the NLRA. *See NLRB* v. *Mackay Radio & Telegraph Co.*, 304 U.S. 333, 345 (1938). A striking employee is entitled to reinstatement to his former job upon making an unconditional offer to return to work. *See NLRB* v. *Fleetwood Trailer Co.*, 389 U.S. 375, 378 (1967). An employer's failure to reinstate violates Sections 8(a)(1) and 8(a)(3) of the NLRA, unless it can show that its action had "legitimate and substantial business justifications." *Id*. at 379. In this case, there is no dispute that Forsyth failed to reinstate the three workers upon their offer to return to work, and that Forsyth had not permanently replaced them.

The NLRB must also adequately explain the basis of its decision, and a failure to do so necessitates a vacatur of the NLRB's decision and order. *See*, *e.g.*, *International Union of Operating Engineers, Local 147, AFL-CIO* v. *NLRB*, 294 F.3d 186, 189, 191 (D.C. Cir. 2002); *NLRB* v. *The Madison Courier, Inc.*, 472 F.2d 1307, 1323-24 (D.C. Cir. 1972). The NLRB's order in the instant case must be vacated and the matter remanded since the NLRB failed to adequately explain the basis of its decision in at least three distinct ways.

First, the NLRB inexplicably failed to address some of Forsyth's most critical arguments. Forsyth argued that it did not have to reinstate the three strikers since it no longer had openings for electricians. A "bona fide absence of available work for the strikers in their pre-strike or substantially equivalent positions" is a legitimate and substantial justification for failure to reinstate. *See Zimmerman Plumbing & Heating Co.*, 334 N.L.R.B. 586, 2001 NLRB LEXIS 498, at *11 (July 18, 2001); *Randall, Burkart/Randall*, 257 N.L.R.B. 1, 6-7 (1981). Not a single word can be found in the NLRB's opinion addressing this argument.

Forsyth also argued that the ALJ erred by concluding that the three employees were strikers, rather than individuals who had simply quit and merely claimed to be on strike. Forsyth pointed to several facts in the record supporting its argument, in addition to an apparent inconsistency between the ALJ's treatment of employees Ray Single-

ton and Hill.[2] As well, the NLRB's opinion is silent as to this argument.

Second, the NLRB failed to explain why it seemingly interpreted particular evidence cited and relied upon by the ALJ very differently at different times. The ALJ had found that Forsyth refused to consider several union-affiliated applicants due to Forsyth's anti-union animus. The only proof of antiunion animus, however, was that Forsyth had rehired Jimmy Brewer, a nonunion, but admittedly poor employee. The ALJ also used this fact (and *only* this fact) to discount Forsyth's explanation for why it refused to reinstate the three strikers (that they were "lazy, unproductive, and ineffective workers," J.A. 1), concluding that the Brewer rehiring "undercut[] this asserted justification." J.A. 23.

The NLRB overturned the ALJ's findings as to the refusal-to-consider claims, concluding:

> [W]e are unwilling to draw an inference of antiunion animus based solely on [Forsyth's] decision to rehire Jimmy Brewer. We note that [Forsyth] offered an explanation for its willingness to give Brewer a second chance. Thus, [Forsyth] offered unrebutted testimony that Brewer did a good job when he first worked for [Forsyth], before he started drinking. Brewer was rehired only after he assured [Forsyth] that he had straightened out. No evidence was offered to rebut this explanation.

J.A. 1. Yet, in affirming the ALJ's conclusion that Forsyth unlawfully failed to reinstate the three strikers, the NLRB stated:

> The judge found, and we agree, that [Forsyth] unlawfully refused to grant preferential reinstatement rights to eco-

---

[2]The ALJ had concluded that Singleton did no more than go "to work for another company and called it a strike," J.A. 22, but did not so conclude for Hill, despite the fact that the only apparent difference between the two was that Hill allegedly went on strike five days after Jones and Kimball picketed their jobsite, while Singleton allegedly went on strike about a week before Jones and Kimball picketed.

nomic strikers David Jones, John Kimball, and Douglas Hill upon their unconditional offers to return to work. The judge rejected [Forsyth's] argument that it was justified in denying reinstatement because these employees were lazy, unproductive, and ineffective workers. We agree with the judge.

*Id*. Hence, by rejecting the ALJ's interpretation of the Brewer rehiring in one instance, but accepting it in another, the NLRB's reasoning — at least without explanation, of which none was provided — appears self-contradictory. Thus, the NLRB failed in this regard as well to adequately explain its decision.

Third, the NLRB also rejected certain findings of the ALJ with similarly inadequate explanation. The ALJ found that the "union business manager orchestrated the activities of these employees including the speed at which they worked to create a crescendo of pressure on [Forsyth] with the crescendo reaching its peak from July 14 to 24, 1995. During this 10 day period Kimball, Jones, and Hill announced they were going 'on strike,' and ceased work. In each case, the individual discussed it with Maurice first." J.A. 13. The ALJ also found that "the Union's strategy included creating the need for [Forsyth] to hire more workers, a need it might then satisfy by referring its members once Benson decided to do as he was told and call Maurice. The Union would create this demand by having the employees it had already 'salted' into [Forsyth] work slowly and unproductively." *Id*. The ALJ based these findings on a careful consideration of the record, and presented compelling arguments for them. Notwithstanding this, the NLRB rejected these findings, stating, without explanation, only that it "did not find sufficient record evidence to support a finding that there was a generalized work slowdown," J.A. 2, and that Forsyth "ha[d] not shown that Jones, Kimball, and Hill participated" in any slowdown. *Id*.

There is nothing improper about the NLRB rejecting findings made and conclusions drawn by the ALJ. *See Standard Dry Wall Products, Inc.*, 91 N.L.R.B. 544, 545 (1950) ("Accordingly, in all cases which come before us for decision we base our findings as to the facts upon a de novo review of the entire record, and do not deem ourselves bound by the Trial Examiner's findings."). But, in the instant case, the ALJ made an extensive review of the record, and justified its conclu-

sions and findings with a thorough analysis. If these conclusions and findings are to be rejected, there must be a thorough explanation for so doing. The Board may not, as it did, rely upon mere conclusory assertions that the ALJ's findings were without adequate support.

## *CONCLUSION*

For the reasons stated, the NLRB's decision and order is vacated and the case is remanded for further proceedings not inconsistent with this opinion.

## *VACATED AND REMANDED*

NIEMEYER, Circuit Judge, dissenting:

Under the more careful review that we give to the Board's findings when they amount to a rejection of the ALJ's findings of fact, I conclude that the Board's findings in this case are not supported by substantial evidence, and therefore I would deny enforcement.